IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VLADIMIR CAMPOS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.: 20-CV-01391-RBF |
| | § | |
| | § | |
| CHALLENGER LIFTS, INC., SNAP | § | |
| ON INCORPORATED, and CARL | § | |
| TURNER EQUIPMENT, INC. | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT CHALLENGER LIFTS, INC.'S
MOTION TO EXCLUDE EVIDENCE AND MOTION IN LIMINE**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff **VLADIMIR CAMPOS** ("Campos") files this response to Defendant **CHALLENGER LIFTS, INC.'s** ("Challenger") Motion to Exclude Evidence and Motion in Limine and, in support thereof, would respectfully provide to the Court the following information, analysis, argument and authorities:

## I.
## OVERVIEW

Although titled as a motion to exclude evidence and a motion in limine, Challenger's motion is really nothing more than an attempt to obtain pre-trial evidentiary rulings regarding evidence that Campos may or may not seek to introduce at trial. Most of Challenger's requests are simply premature and based on hypothetical

1

situations.  Nevertheless, Campos will respond to each section of the motion in this response.

**II.**
**<u>ANALYSIS, ARGUMENT AND AUTHORITIES</u>**

**1. Improper Voir Dire: "Commitment Questions, Including Questions Regarding the Ability to Award a Specific Amount of Damages**

The manner in which a trial court conducts voir dire is reviewed for an abuse of discretion.  *Cimino v. Raymark Indus.*, 151 F.3d 297, 323 (5th Cir. 1998).  A trial court abuses its discretion if the scope of voir dire is inadequate to discover bias or deprives a party of the opportunity to make reasonably intelligent use of its peremptory challenges.  *Id.* at 323; see also *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex.1989).

The primary purpose of voir dire is to inquire about specific views that would prevent or substantially impair jurors from performing their duty in accordance with their instructions and oath. See *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 749 (Tex.2006).  A trial judge's refusal to allow certain questions during voir dire is reviewed under an abuse-of-discretion standard. See *Id.* at 753–54. A court abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges. *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex.1989).

In its motion in limine, Challenger presupposes that Campos will ask panelists

2

impermissible "commitment' questions.  Campos does not intend to do anything of the sort.  However, Campos should be permitted to ask jurors whether they would be able to award whatever damages would be supported by the evidence and to explore any biases or prejudices that may impact their ability to award damages based on the evidence. The term "commitment questions" is vague and this Court should not pre-limit permissible voir dire questions base don hypotheticals suggested by Challenger.

Challenger's motion should be denied.

## 2. Prior claims, lawsuits, or settlements.

Evidence of similar accidents, whether in the form of claims, lawsuits, or settlements, may be relevant to a defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength or a product, the standard of care, and causation.  See *Ramos v. Liberty Mutual Ins. Co.*, 615 F.2d 334, 338-339 (5th Cir. 1980); *See also Dollar v. Long Mfg., N.C., Inc*, 561 F.2d 613, 617 (5th Cir. 1977), cert. denied, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978); *Arreloa v. Union Pacific Railroad, et. al.*, 657 S.W.3d 789, 822-823 (Tex. App.—El Paso 2022, no pet.); *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 148 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also* FED. R. EVID. 401-403, 404(b).  As such, to the extent the evidence will show that there have been other instances in which the support arms of the Challenger lift have fallen are relevant as to whether a product defect existed, whether Challenger knew about the defect, and

3

whether a standard of care was violated, such evidence is relevant to Campos' claims against Challenger.

Challenger's motion should be denied.

### 3. Challenger Lifts, Inc.'s Advertising or Marketing

Campos has alleged that Challenger defectively designed and marketed the Challenger CL 12 hydraulic lift that caused his injuries. As such, Challenger is effectively asking this Court to exclude evidence related to the Plaintiff's claims against it.

The evidence adduced in discovery demonstrates that there is more than sufficient evidence to support Campos' claim that Challenger defectively designed and marketed the hydraulic lift in question. More specifically, while working on the idle side of the lift on the day of the incident, the support arms of the Challenger lift were raised to what Campos and Hernandez believed was the first safety latch. *See Oral Deposition of Luis Torres Hernandez 29:18-30:4.* Both Campos and his coworker attested to hearing the first safety latch lock into place. *See Oral Deposition of Alex Hernandez, 30:4; 31:19; 86:23; 87:2, 16.* Unknown to Campos and his co-worker, the arms stopped not because they were on the latch, but because they were on top of what is has been referred to as the "cylinder". *See Oral Deposition of Jim Zuber, 56:9-15.* When reviewing the surveillance video, Jim Zuber, the Challenger engineer who designed the carriage for the lift in question, thought it appeared that the arms were on the first latch. *See Id., 125:25 – 129:1.* Zuber has known about this dangerous condition

since 1999, but nothing was ever done to eliminate or warn of this condition. *Id., 33:15 – 34:8.* Despite this knowledge, Challenger chose not to implement any design changes, warnings, or instructions to prevent or in any way warn or instruct users of the hazards associated with the false-latch position. This design defect existed at the time that the product was shipped and marketed.

Dr. Rasty, one of Campos' retained experts, testified that "the incident at issue occurred as a result of a number of deficiencies in design, warning, and instructions that substantially contributed to the creation of a false-latch position for supporting the carriage. *See Affidavit of Jahan Rasty, Ph.D., P.E., M.B.A., CFEI, CFII attached to Plaintiff's Response to Challenger's Motion for Partial Summary Judgment.* According to Dr. Rasty, a number of economically and technologically feasible alternative designs were available that would have eliminated the creation of the false-latch position. *Id.* Additionally, inclusion of warnings and instructions to inform the user of the potential for false-latch position and method(s) of avoidance would likely have prevented the occurrence of this incident." *Id.*

In cases involving marketing defects, Texas courts have recognized that a marketing defect exists when a defendant knows or should know of a potential risk of harm presented by a product but markets it without adequately warning of the danger or providing instructions for safe use. *Jobe v. Penske Truck Leasing Corp.*, 882 S.W.2d 447 (Tex. App. – Dallas 1994, no writ); *USX Corp. v. Salinas*, 818 S.W.2d 473, 482

(Tex. App.—San Antonio 1991, writ denied). As part of his burden of proof, Campos must present evidence on each of the following elements: (1) the existence of a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product; (2) the product supplier knew or should have known of a risk of harm; (3) the absence of a warning or instruction rendered the product unreasonably dangerous to the ultimate user or consumer; and (4) the existence of a causal nexus between the failure to warn or instruct and his injury. *Id.* at 482-83. Thus, in a marketing defect case, a plaintiff must raise a fact issue on whether a warning or instruction should have been provided. *Id.,* at 483.

Based on the evidence adduced in discovery, Campos has produced evidence to support his defective marketing/advertising claims. For example, there is no dispute that Challenger failed to provide any warnings or instructions regarding the changing of hydraulic hoses. *See Oral Deposition of Jon Bennet, 9:25; 10:5, 11-23; 11:2.* It is also undisputed that it was foreseeable that routine maintenance, including the changing of hydraulic hoses, would need to be performed. *See Oral Deposition of Charles Mivelaz, 10:23; 11:4; 12:22; 54:18; 94:21; 119:1.* Further, there is no dispute that Challenger failed to provide any warnings or instructions about the possible existence of a "false latch" with the lift or how to avoid the consequences of arms falling when changing hydraulic hoses. *See Oral Deposition of Luis Torres Hernandez, 34:23-35:2; 82:18-83:2.*

6

Also, there is no visual indicator on the post to indicate where the first latch was located which would ensure that the arms were raised above the lowest latch and avoid a "false latch." *See Affidavit of Dr. Rasty, pp. 14-15.*

Further, as Dr. Rasty testified in his affidavit, that the "inclusion of warnings and instructions to inform the user of the potential for false-latch position and method(s) of avoidance would likely have prevented the occurrence of this incident." *Id.,* at p. 10.

Challenger's motion should be denied.

**4. Evidence of any post-sale changes or the lack thereof by Challenger**

Campos has alleged that Challenger breached a duty by failing to warn of the product defect, even after the Challenger CL 12 hydraulic lift was sold. As such, once again, Challenger effectively asks this Court to exclude evidence related to Campos' claims against it.

There is no dispute that Challenger failed to send out any post-sale warnings or instructions regarding the changing of hydraulic hoses or false latches. *See Oral Deposition of Jon Bennet, 9:25; 10:5, 11-23; 11:2.* It is also undisputed that it was foreseeable that routine maintenance, including the changing of hydraulic hoses, would need to be performed. *See Oral Deposition of Charles Mivelaz, 10:23; 11:4; 12:22; 54:18; 94:21; 119:1.* Further, this no dispute that Challenger did not provide any warnings or instructions about the possible existence of a "false latch" with the lift or how to change the hoses. *See Oral Deposition of Luis Torres Hernandez, 82:18-83:2.*

7

Challenger's head of service testified that he would have liked to have known about the condition that led to the crushing of Campos' hands to assist him in providing technical support. *See Oral Deposition of Jon Bennet, 15:12-16.* Further, Bennet noted this would be good information to provide to owners. *Id., 17:16 – 21.* And, if he were the owner or service company, he would want to know. *Id., 18:15-20.* Bennet testified that he has not made the recommendation for a post market release because of "this situation", but it would be a good idea. *Id., 18:3 – 14.*

Moreover, in his deposition, Bennet testified as follows:

```
18   Q.  Has there been any discussion -- well, let me
19   ask it this way:  Does Challenger ever send out post
20   marketing instructions or bulletins to purchasers of their
21   lifts?
22   A.  Yes, periodically.
23   Q.  And will some of it be relative to the lift that
24   exists or it might be new products?
25   A.  Mainly on new products.
```

*Id., 16:18 to 16:25*

```
16   Q.  Now, would it seem reasonable to you that if you
17   knew about a potentially dangerous condition that could
18   exist in the servicing and removal of hoses, that that
19   would be something good to provide owners and -- of your
20   lifts?
21   A.  Yes.
22   Q.  As I understand it, that has not been done at
23   this point, as it relates to what occurred in this event?
24   A.  That is correct.
25   Q.  And if that were going to be done, it would be

1   done through your department, correct?
2   A.  Correct.
```

3  Q.  Have you made any recommendation to those above
4  you that it might be a good idea to give a post market
5  bulletin, release, instruction on what happened here in
6  this instance, so that the owner would be aware of that
7  potential condition?
8  A.  I have not, no.
9  Q.  Do you intend to do that?
10 A.  I -- probably, I just haven't said anything about
11 it because of this situation.
12 Q.  Right.  But it sounds like it'd be a good idea,
13 right?
14 A.  Yes.
15 Q.  And if you were a -- an owner, you would like to
16 have that knowledge, correct?
17 A.  Yes.
18 Q.  Or if you were a service company, you'd like to
19 have that knowledge.
20 A.  Yes.

*Id., 17:16 to 18:20.*

According to Bennet, Challenger periodically sends out post-sale marketing instructions or bulletins to purchasers of its products.  *Id., 16:18 to 16:25.*  But Challenger did nothing here.  In other words, Challenger has routinely undertaken the duty to provide product purchasers with post-stale instructions or bulletins.  At the very least, the jury should be able to hear evidence to support Campos' claims as to whether Challenger undertook a duty and then breached such duty to warn.  See generally *Cone v. Vortens, Inc.*, No. 4:17-CV-00001-ALM-KPJ, 2019 U.S. Dist. LEXIS 54329 (E.D. Tex. 2019); *Torrington Co. v. Stutzman*, 46 S.W.3d 829 (Tex. 2000).

Challenger's motion should be denied.

**5.  References, arguments, or questions that appeal to the jurors' power to**

> **improve the safety of themselves, their family members and their community by rendering a verdict that will reduce or eliminate allegedly "dangerous" or "unsafe" conduct.**

The "Reptile Theory" is a method of persuading jurors to find in a plaintiff's favor by invoking the primal (or reptilian) part of jurors' minds, which drives them to act to protect themselves or their community. *Baxter v. Anderson,* 277 F. Supp. 3d 860, 861 (M.D. La. 2017). The "Golden Rule" is a strategy of persuasion which asks a juror to put themselves in a party's position. *Barrella v. Vill. of Freeport,* 714 F. App'x 78, 80 (2d Cir. 2018).

To Campos' knowledge, there is no Fifth Circuit precedent totally prohibiting "Golden Rule" arguments.  In fact, the Fifth Circuit permits such arguments on the issue of liability. *See Stokes v. Delcambre,* 710 F.2d 1120, 1128 (5th Cir. 1983) ("The use of the Golden Rule argument is improper only in relation to damages. It is not improper when urged on the issue of ultimate liability.").  See also *Burrage v. Harrell,* 537 F.2d 837 (5th Cir.1976).

A similar motion in limine request to the one before this Court appeared before a Louisiana district court and was denied.  That court observed that, when presented with similar "reptile theory" arguments, "[t]he [c]ourt is being asked to rule on abstract and generalized hypotheticals" rather than specific "language, phrases or evidence the [c]ourt should deem improper." *Baxter v. Anderson,* 277 F. Supp. 3d 860, 863 (M.D. La. 2017) *see also Manion v. Ameri-Can Freight Sys. Inc.,* No. 17-CV-3262 (PHX)

(DWL), 2019 WL 3718951, at *6-7 (D. Ariz. Aug. 7, 2019); *Gannon v. Menard, Inc.,* 2019 WL 7584294, at *5 (S.D. Ind. Aug. 26, 2019).

Challenger's motion should be denied.

**6.      Opinions or beliefs of what Vladimir Campos would have done if different warnings or instructions would have been given.**

Challenger improperly seeks to expand the limitations on testimony of lay witnesses to include witnesses (e.g. expert witnesses) who are permitted to provide such testimony.  Challenger's case citations all refer to lay witnesses testimony, yet its request seeks to exclude all testimony concerning opinions or beliefs, which is improper.

Fed.R.Evid. 701 provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

A witness may give an opinion when he has personal knowledge of the facts. *Boehm v. Fox,* 473 F.2d 445 (10th Cir.1973). If a witness is not testifying as an expert, his testimony only needs to be rationally based on his perception and helpful to determination of a fact in issue to be admissible. *Greenwood Ranches, Inc. v. Skie Construction Co.,* 629 F.2d 518 (8th Cir.1980). FED.R. EVID. 701(a).

Challenger's motion should be denied.

**7.      Testimony, inferences, references, arguments or documents related to another automotive lift manufacturer.**

Campos has alleged that Challenger failed to meet the standard of care in the industry. Evidence of how the industry operates goes directly to the question of whether Challenger violated the standard of care and breached its duties.

Campos' retained experts, Dr. Jahan Rasty and Matthew Mills, have produced written reports and testified via affidavit that Mills personally inspected a 12,000 lb rotary lift that incorporated a safer alternative design that would never allow the top diaphragm plate of the carriage to rise above the cylinder and also a rounded (as opposed to a flat) top for the cylinder as was on the Challenger lift, and would not allow the carriage to create a 'false latch'. *See Affidavits of Matthew Mills and Jahan Rasty*. Mills and Rasty's expert testimony support Campos' claims against Challenger.

Further, Dr. Rasty testified that "the incident at issue occurred as a result of a number of deficiencies in design, warning, and instructions that substantially contributed to the creation of a false-latch position for supporting the carriage. As outlined in the body of his affidavit, a number of economically and technologically feasible alternative designs were available that would have eliminated the creation of the false-latch position. Additionally, inclusion of warnings and instructions to inform the user of the potential for false-latch position and method(s) of avoidance would likely have prevented the occurrence of this incident." *See Affidavit of Jahan Rasty.*

Challenger is effectively asking this Court to exclude evidence related to Campos' claims against it. In other words, this Court is being asked to make evidentiary

rulings in a motion in limine that should be addressed in either a motion to exclude or an appropriate objection to the introduction of evidence at the time of trial.

Challenger's motion should be denied.

## 8.    Opinions Concerning Challenger Lifts, Inc.'s State of Mind or Knowledge

Campos has alleged that Challenger defectively designed and marketed the Challenger CL 12 hydraulic lift that caused his injuries. Challenger's state of mind or knowledge go to each of these claims.

In cases involving marketing defects, Texas courts have recognized that a marketing defect exists when a defendant knows or should know of a potential risk of harm presented by a product but markets it without adequately warning of the danger or providing instructions for safe use. *Jobe v. Penske Truck Leasing Corp.*, 882 S.W.2d 447 (Tex. App. – Dallas 1994, no writ); *USX Corp. v. Salinas*, 818 S.W.2d 473, 482 (Tex. App.—San Antonio 1991, writ denied). In order to recover on his claims, a claimant must present evidence on each of the following elements: (1) the existence of a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product; (2) the product supplier knew or should have known of a risk of harm; (3) the absence of a warning or instruction rendered the product unreasonably dangerous to the ultimate user or consumer; and (4) the existence of a causal nexus between the failure to warn or instruct and his injury. *Id.* at 482-83. Thus, in a marketing defect case, a plaintiff must raise a fact issue on whether a warning or

instruction should have been provided. *Id.,* at 483.

In his deposition, Jim Zuber, the Challenger engineer who designed the lift in question, testified that he has known about the dangerous "false latch" condition since 1999, but nothing was ever done to eliminate or warn of this condition. *See Oral Deposition of Jim Zuber, 33:15 – 34:8.* Despite this knowledge, Challenger chose not to implement any design changes, warnings, or instructions to prevent or in any way warn or instruct users of the hazards associated with the false-latch position.

Further, Dr. Rasty has testified about Challenger's knowledge of the deficiencies in design, warning, and instructions that substantially contributed to the creation of a false-latch position for supporting the carriage. As outlined in the body of Dr. Rasty's affidavit, a number of economically and technologically feasible alternative designs were available that would have eliminated the creation of the false-latch position. Additionally, inclusion of warnings and instructions to inform the user of the potential for false-latch position and method(s) of avoidance would likely have prevented the occurrence of the incident. *See Affidavit of Jahan Rasty.*

As such, Challenger is again effectively asking this Court to exclude evidence related to the Campos' claims against it. This Court is being asked to make evidentiary rulings in a motion in limine which should more properly be addressed in either a motion to exclude or an appropriate objection to the introduction of evidence at the time of trial.

Challenger's motion should be denied.

**9.      Impermissible Commenting by a Witness on the Testimony of Other Witnesses**

Challenger is seeking to limit the ability of Campos' witnesses to comment on or criticize the testimony of other witnesses, including any such evidence proffered by an expert witness.

While cases cited by Challenger recognize that, in some cases, witnesses are not permitted to testify about the credibility of other witness, the Federal Rules of Evidence contain no general rule addressing expert evidence that attacks or bolsters credibility. Indeed, the Fifth Circuit has asserted that "[t]he readily apparent principle is that the jury should, within reason, be informed of all matters affecting a witness's credibility to aid in their determination of the truth." *United States v. Partin*, 493 F.2d 750, 762 (5th Cir. 1974).

Under federal law, the trial court must evaluate the reliability of the expert's opinion before it can be admissible. More specifically, Federal Rule of Evidence 702 provides: If scientific, technical, or other specialized knowledge will help the fact-finder in understanding the evidence or deciding a fact issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. FED. R. EVID.

702. Some expert testimony addressed to credibility may not be able to clear this hurdle, but some types of expert testimony should be admissible, including testimony related to an opposing expert's credibility, when the subject of such testimony is beyond the experience or knowledge of ordinary lay people and would be helpful to the fact finder.

In this case, for example, Campos' retained liability experts will offer testimony about the defects in the design and marketing of the Challenger lift in question that will inherently conflict with the opinions and conclusions of Challenger's experts and other witnesses. Campos' experts are entitled to testify why the opinions of  Challenger's experts are not credible and Challenger's motion, if granted, would arguably preclude Campos' experts from offering such testimony.  As such, Challenger's motion should be denied.

**10.    Vladimir Campos' Habit or Character as "Safety Conscious"**

Campos, his co-worker, and supervisor are expected to testify as to Campos' safety conscious routine.  Federal Rule of Evidence 406 allows the introduction of evidence of the habit of a person for purposes of proving that the person acted in conformity with his habit on a particular occasion.  See *Mobil Expl. & Prod'g U.S., Inc. v. Cajun Constr. Servs.*, 45 F.3d 96, 99-100 (5th Cir. 1995); *Reyes v. Missouri Pac. R. Co.,* 589 F.2d 791, 794 (5th Cir.1979); FED. R. EVID. 406.

Campos will have the burden of laying the proper predicate for any such testimony at trial.   Instead, Challenger is asking this Court to make a pre-trial

evidentiary ruling via a motion in limine when the issue would be more properly addressed at the time of trial. Accordingly, Challenger's motion should be denied.

**11. Future Medical Treatment**

Dr. Douglas Cromack is the Plaintiff's treating surgeon. At the time his deposition was taken, Dr. Cromack did not have x-rays that were up-to-date but he did testify that, because of the extensive involvement of all the Plaintiff's hand joints, he was at risk for developing traumatic arthritis and, as a result, would be a candidate for joint replacement and/or fusion. More specifically, Dr. Cromack testified that there is a concern that Mr. Campos would develop arthritis and that he was at an "increased risk" for arthritis when compared to an uninjured individual and that he could require additional surgery, such as a joint replacement or a fusion of the bones in his hands. *See Oral Deposition of Dr. Douglas Cromack, 23:18-24:9; 24:10-19; 25:10-18; 33:9-34:1; 83:23-84:18.*

Since Dr. Cromack's deposition was taken, Mr. Campos had an appointment with Dr. Cromack on March 5, 2024, at which time Dr. Cromack reviewed Mr. Campos' updated x-ray and will opine that Mr. Campos does indeed have arthritis. See Dr. Cromack's clinical notes following his March 5 examination of Mr. Campos, a copy of which are attached hereto, which states:

> "Xrays of bilateral hands obtained today and personally reviewed demonstrating healed fractures to left third metacarpal with plate and screw hardware fixation, no failure of hardware. Healed distal thumb phalanx without change in alignment. Healed fractures to second and third metacarpals to right

hand with plate and screw hardware fixation; no hardware failure. Bilateral hands show multi joint mild arthritis degenerative changes to all MCP and IP joints." **Bates CAMPOS 003016**

Challenger's motion should denied.

## 12.    Testimony, references, or argument regarding Challenger lift components being manufactured in China

Challenger's last request would prohibit Campos from identifying where parts for the Challenger lift in question were manufactured.  It is undisputed that the cylinder for the lift was made in Yanti, China (See Oral Deposition of Jim Zuber 90:7-11), the carriage was made in Zing, China (Id. at 90:14-18), and some of the lift drawings are in Chinese.

Whether parts were manufactured and drawings produced in China (or anywhere else for that matter) are simply facts that a jury is entitled to hear.  There is no need or reasonable grounds to exclude such factual evidence.  Challenger's motion should denied.

<u>CONCLUSION</u>

For the reasons stated above, Campos respectfully requests that Challenger's motion to exclude evidence and motion in limine be denied.

Respectfully submitted,

**THE LAW FIRM OF ALTON C. TODD**

By: ___/s/  Alton C. Todd_____
       Alton C. Todd, ***Attorney in Charge***

18

Fed Bar No. 1309
State Bar No. 20092000
Seth Mitchell Park
State Bar No. 24102325
312 South Friendswood Drive
Friendswood, Texas  77546
(281) 992-8633
(281) 648-8633 Facsimile
alton@actlaw.com
seth@actlaw.com

Law Offices of Steven T. Sanders, PC
Steven T. Sanders
State Bar No. 24041861
13526 George Road, Ste. 205
San Antonio, Texas 78230
stsanders@stsanderslaw.com

ATTORNEYS FOR PLAINTIFF

<u>CERTIFICATE OF SERVICE</u>

I affirm that on this 19th day of April 2024, a copy of the foregoing instrument was served to the parties below pursuant to Fed. R. Civ. P.

THOMPSON, COE, COUSINS & IRONS, LLP
Michael Kirkland
2801 Via Fortuna, Ste. 300                    *Via E-Service*
Austin, Texas 78746
Ph: 512-703-5014
MKirkland@thompsoncoe.com

MATTHEISEN, WICKERT & LEHRER, S.C.
Mark A. Solomon                               *Via E-Service*
11940 Jollyville Rd., Ste. 215N
Austin, Texas 78759
msolomon@mwl-law.com


                              *<u>Alton C. Todd</u>*
                              Alton C. Todd